Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| MADISON RE I.I.<br><br>Demandante-Peticionaria<br><br>v.<br><br>PHOENIX UNIVERSAL CAPITAL I LLC; THE PHOENIX FUND LLC Y OTROS<br><br>Demandadas-Recurridas | TA2026CE00018 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Número: BY2025CV01872<br><br>Sobre: Cobro de Dinero y Ejecución de Gravamen Mobiliario |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

**Ortiz Flores, Jueza Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Comparece ante nosotros Madison Re I.I. (MadRe; parte peticionaria) mediante el presente recurso de *Certiorari* y nos solicita que revisemos la *Resolución Interlocutoria*, emitida el 9 de diciembre de 2025, notificada al día siguiente, por el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] Mediante esta, el TPI declaró *No Ha Lugar* la *Moción para Desestimar la Reconvención* y la *Moción para Desestimar la Demanda Contra Terceros,* presentadas por la parte peticionaria el 30 de septiembre de 2025.

Adelantamos que, por los fundamentos que exponemos a continuación, denegamos expedir el recurso de *certiorari*.

**I**

El 10 de abril de 2025, MadRe instó una *Demanda* de cobro de dinero y ejecución de garantías contra Phoenix Universal Capital I LLC (en adelante, PUC) y The Phoenix Fund LLC (en adelante, TPF) (en conjunto, parte recurrida).[2] Alegó que, el 22 de marzo de 2024, las partes otorgaron un *Credit Agreement* (Contrato de Préstamo), mediante el cual MadRe le

---

[1] SUMAC, Entrada 38 en BY2025CV01872.
[2] SUMAC, Entrada 1 en BY2025CV01872.

concedió a PUC un préstamo por la cantidad principal de $10,000,000.00, garantizado por un *Promissory Note* (Pagaré). Además, señaló que, mediante documento titulado *Pledge and Security Agreement* (Contrato de Garantía), PUC le otorgó un derecho de garantía sobre su efectivo presente y futuro. Adujo que, a pesar de que se le concedió a PUC una breve prórroga para realizar el pago de lo adeudado, esta incumplió con su obligación. Por otra parte, sostuvo que las partes suscribieron un *Forbearance Agreement* (Acuerdo de Indulgencia por Morosidad), el cual cubre: (i) el contrato de préstamo, (ii) el pagaré y (iii) un acuerdo de línea de crédito garantizada, nombrados en conjunto como los *Loan Agreements* (Acuerdos de Préstamo) o los *Original Credit Documents* (Documentos de Crédito Originales). Indicó que, en caso de incumplimiento del Acuerdo de Indulgencia por Morosidad por parte de PUC y TPF, podría ejercer sus derechos bajo los Acuerdos de Préstamo de forma inmediata y sin aviso previo. Alegó que, al presente, las obligaciones de pago de la parte recurrida se encuentran vencidas, líquidas y exigibles. En consecuencia, solicitó que se condenara a la parte recurrida al pago de una suma no menor de $11,306,666.67; gastos y honorarios de abogado incurridos en las gestiones de cobro; y honorarios de abogado e intereses por temeridad. Además, solicitó que, en ausencia de pago por parte de la parte recurrida, se ordenara la ejecución de la colateral constituida en el Contrato de Garantía.

Luego de varios tramites procesales innecesarios pormenorizar, el 22 de agosto de 2025, la parte recurrida presentó su *Contestación a la Demanda, Reconvención y Demanda Contra Terceros*.[3] Específicamente, presentó reconvención contra MadRe. Por otro lado, en lo relativo a la demanda contra tercero, la misma incluyó a PUC Holdings, LLC (PUC-H) como demandante y a Mark A. Jacobs (señor Jacobs); Ann Dearie Jacobs (señora Jacobs) (en conjunto, Matrimonio Jacobs); Madison Re-Holdings Company Inc. (MadRe-H); MIG Holdings, LLC. (MIG-H); Caparra Capital

---

[3] SUMAC, Entrada 14 en BY2025CV01872.

Management PR, Inc. (CCM); y Captives Alternatives, LLC. (CapAlt) como terceros demandados. En esencia, indicó que las partes perfeccionaron una serie de transacciones dirigidas a que TPF adquiriera control sobre MadRe, las cuales están siendo frustradas dolosamente por MadRe y los terceros demandados. En específico, indicó que la primera en la serie de transacciones dirigidas a que TPF adquiriera control sobre MadRe fue un préstamo por la cantidad de $10,000,000.00, concedido por PUC-H a CapAlt, el cual se evidencia en un documento titulado *Secured Promissory Note* (Nota CapAlt). Indicó que la Nota CapAlt está garantizada personalmente por el Matrimonio Jacobs, por lo que estos son solidariamente responsables por todas las sumas adeudadas por CapAlt bajo la Nota CapAlt.

Por otra parte, alegó que el señor Jacobs y TPF perfeccionaron el *Ownership Interest Purchase Agreement* (OIPA). Explicó que, de acuerdo con el OIPA, TPF adquiriría control de MadRe, MadRe-H, MIG-H y CCM. Asimismo, indicó que, como parte del proceso de cierre, el señor Jacobs se comprometió con asistir a TPF en proveer información en su posesión, según fuera requerida por el Comisionado de Seguros de Puerto Rico y con proveer información como parte del proceso de debida diligencia de TPF. No obstante, adujo que el señor Jacobs incumplió con dicho deber y que dicho incumplimiento obstaculizó por completo la consumación de la intención de comprar de TPF. Además, alegó que el Grupo Madison y el señor Jacobs defraudaron a TPF para dejar de pagar unas sumas adeudadas y recuperar unas cantidades que invirtieron en TPF. Expresó que, debido a dichas actuaciones ilegales y dolosas, han sufrido pérdidas y daños económicos sustanciales. Sostuvo que, al no poder consumar el OIPA, aún existe una deuda evidenciada, garantizada personalmente por el Matrimonio Jacobs, por la suma de $13,017,222.00. Además, señaló que, al no poder consumar el OIPA, TPF se expone al pago prematuro e innecesario del préstamo a corto plazo. Por todo lo anteriormente expuesto, solicitó que se declarara que el OIPA es un contrato válido y

exigible, y al Matrimonio Jacobs, MadRe-H, MIG-H y CCM a consumar las transacciones allí contempladas, incluyendo asistir a TPF a solicitar las autorizaciones necesarias del Comisionado de Seguros de Puerto Rico. Asimismo, solicitó las cantidades adeudadas, daños y perjuicios, así como gastos y honorarios de abogado incurridos en las gestiones de cobro y honorarios de abogados e intereses por temeridad.

Por su parte, el 30 de septiembre de 2025, MadRe presentó *Moción para Desestimar la Reconvención.*[4] En esta, adujo que la reconvención intenta imputar responsabilidad con respecto al OIPA y la Nota CapAlt. Sostuvo que, lo anterior, se trata de una relación comercial cuyo propósito habría sido la adquisición de MadRe-H por parte de TPF, mediante un contrato denominado OIPA, en el cual MadRe no es parte. Además, indicó que MadRe tampoco es parte del contrato en el cual TFP y PUC alegan que PUC-H le otorgó un préstamo a CapAlt por la suma de $10,000,000.00, garantizado por el Matrimonio Jacobs. En consecuencia, solicitó la desestimación de la reconvención instada por la parte recurrida, así como la imposición de costas y honorarios de abogado.

En esa misma fecha, MadRe presentó una *Moción para Desestimar la Demanda Contra Terceros.*[5] En esencia, indicó que las partes indispensables que alega la parte recurrida no son partes del contrato de préstamo ni del Acuerdo de Indulgencia por Morosidad. Sostuvo que la demanda contra terceros no es contingente al resultado de la *Demanda* ni existe entronque común. Ante ello, solicitó la desestimación la demanda contra terceros presentada por PUC y TPF, así como la imposición de costas y honorarios de abogado.

En respuesta, el 8 de diciembre de 2025, PUC, TPF y PUC-H presentaron una *Oposición Consolidada a Mociones de Desestimación.*[6] En esta, la parte recurrida alegó que la reconvención presenta reclamaciones plausibles en contra de MadRe. Explicó que surge de la

---

[4] SUMAC, Entrada 25 en BY2025CV01872.
[5] SUMAC, Entrada 26 en BY2025CV01872.
[6] SUMAC, Entrada 35 en BY2025CV01872.

Sección 1.1 del OIPA que MadRe fue una parte expresamente vinculada en el OIPA y que, a la fecha en que se firmó el OIPA, el señor Jacobs era el titular del Grupo Madison, que incluye a MadRe. En lo relativo a la acción por daños y perjuicios, indicó que existe un contrato expreso e implícito que vincula directa e indirectamente a MadRe y su incumplimiento con obligaciones principales, materiales e indispensables para la consumación de las transacciones allí contempladas. A tenor, solicitó que se declarara *No Ha Lugar* las mociones de desestimación presentadas por MadRe y que, en su consecuencia, ordenara a MadRe a contestar la reconvención.

Luego de evaluar las posturas de las partes, el 9 de diciembre de 2025, notificada al día siguiente, el foro de instancia emitió una *Resolución Interlocutoria* en la que declaró *No Ha Lugar* la *Moción para Desestimar la Reconvención,* así como la *Moción para Desestimar la Demanda Contra Terceros,* ambas presentadas por MadRe el 30 de septiembre de 2025.

En desacuerdo, el 7 de enero de 2026, MadRe presentó *Solicitud de Certiorari* en el cual esbozó los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL NO DESESTIMAR LAS CAUSAS DE ACCIÓN DE LA RECONVENCIÓN DIRIGIDAS A MadRe.
>
> SEGUNDO ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL NO DESESTIMAR LA DEMANDA CONTRA TERCEROS QUE ACUMULA A PERSONAS Y ENTIDADES NO RELACIONADAS CON LA DEMANDA Y CUYAS RECLAMACIONES NO SON CONTINGENTES NI TIENEN "ENTRONQUE COMÚN" CON LA RECLAMACIÓN ORIGINAL.

Por otro lado, el 6 de febrero de 2026, TPF y PUC presentaron su *Alegato de la Parte Recurrida en Oposición "Solicitud de Certiorari"*, por lo que, con el beneficio de la comparecencia las partes, procedemos a exponer el derecho aplicable.

**II**

El auto de *certiorari* es un vehículo procesal extraordinario que le brinda autoridad a un tribunal de mayor jerarquía para revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et*

*al.,* 212 DPR 194 (2023), que cita a: *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders v. BBVAPR*, 185 DPR 307, 337-338 (2012). Aunque se trata de un recurso discrecional, existen unos parámetros que sirven de guía al momento de decidir si debemos, como foro revisador, expedir o denegar el auto. *IG Builders v. BBVAPR*, *supra.* De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). En específico, la Regla 52.1 dispone lo siguiente:

> […]
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […]

Conforme a lo dispuesto en la anterior disposición legal y la jurisprudencia interpretativa, nos corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari.* Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué supuestos se podrá expedir el auto de *certiorari*. En aquellos escenarios, en los que la materia no esté comprendida dentro de la citada regla, el tribunal revisor debe negarse a expedir el auto de *certiorari*.

Así las cosas, el primer examen al que debemos someter todo recurso de *certiorari* para determinar si debemos expedirlo es que debe tratar sobre alguna de las materias especificadas en la citada Regla 52.1

de Procedimiento Civil, *supra*. Este examen es mayormente objetivo. Por esto, se ha señalado que "los litigantes deben abstenerse de presentar recursos de *certiorari* para revisar órdenes y resoluciones de asuntos que no estén cobijados bajo las disposiciones de la Regla 52.1". Hernández Colón, *Derecho Procesal Civil*, 5ta ed., LexisNexis, San Juan, 2010, pág. 476.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, de acuerdo con lo dispuesto en la citada Regla 40, *supra*, debemos evaluar "tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada, a los fines de determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio." *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008), que cita a *Negrón v. Srio. de Justicia*, 154 DPR 79 (2001). Así pues, la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros",[7] sino que como Tribunal revisor debemos ceñirnos a los criterios antes citados. Si luego de evaluar los referidos criterios, este tribunal decide no expedir el recurso, podemos

---

[7] *IG Builders v. BBVAPR*, 185 DPR 307, 338 (2012), que cita a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

fundamentar nuestra determinación, mas no tenemos la obligación de así hacerlo.[8]

**III**

MadRe nos solicita la expedición de un auto de *certiorari* en su *Petición de Certiorari* a los fines que revoquemos la *Resolución Interlocutoria*, emitida el 9 de diciembre de 2025, notificada al día siguiente, por el TPI, la cual declaró *No Ha Lugar* la *Moción para Desestimar la Reconvención* y la *Moción para Desestimar la Demanda Contra Terceros,* presentadas por la peticionaria el 30 de septiembre de 2025. En el recurso ante nuestra consideración, la peticionaria nos señala que el foro judicial recurrido se equivocó y abusó de su discreción al **no desestimar las causas de acción de la reconvención dirigidas a MadRe** y al **no desestimar la demanda contra terceros que acumula a personas y entidades no relacionadas con la demanda y cuyas reclamaciones no son contingentes ni tienen "entronque común" con la reclamación original.**

Luego de evaluar los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, y de la Regla 40 de este Tribunal, *supra*, resolvemos que no existe razón alguna para ejercer nuestra discreción en el caso ante nuestra consideración. Somos del criterio que no se justifica nuestra intervención en esta etapa del procedimiento, por tal razón procedemos a denegar la expedición del auto de *certiorari* para que continúen los procedimientos del manejo del caso en el Tribunal de Primera Instancia.

**IV**

Por lo anteriormente expuesto, denegamos expedir el auto de *certiorari* solicitado.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] 32 LPRA Ap. V, R. 52.1.